Filed 6/10/21  Merritt v. L.A. County Civil Service Commission CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GREGORY MERRITT,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>LOS ANGELES COUNTY CIVIL SERVICE COMMISSION,<br><br>      Defendant;<br><br>COUNTY OF LOS ANGELES,<br><br>      Real Party in Interest and Respondent. | B303439<br><br>(Los Angeles County Super. Ct. Nos. BS156979 BS167381) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld and Alexander S. Nazarov for Petitioner and Appellant.

No appearance for Defendant.

Gutierrez, Preciado & House, Calvin House and Baruch Y. Kreiman for Real Party in Interest and Respondent.

_____

Petitioner Gregory Merritt, a supervising children's social worker with the Los Angeles County Department of Children and Family Services (the Department), was fired by the County of Los Angeles (County) in September 2013. The Civil Service Commission (Commission) issued a final order upholding his discharge. This appeal is from the trial court's denial of Merritt's petition for administrative mandamus challenging the Commission's order.

Merritt does not strongly contest the County's decision to discipline him because he admittedly failed to follow the Department's policy and a child was murdered as a result. Rather, he focuses his argument primarily on whether his level of misconduct justified his discharge, or whether he should have received, as the hearing officer recommended, a 10-day suspension, or as the Commission originally ordered, a 30-day suspension.

We affirm the judgment. Merritt's argument that the Commission's decision violated statutory and constitutional due process notice requirements fails. Not only did he waive the argument by failing to raise it in his amended petition for writ of administrative mandamus, but there is no substantive merit to it. Similarly, we reject his attempt to downplay and deflect from his own misconduct by arguing the County is comparatively at fault because it did not provide him sufficient resources to do his job. That is not a defense here. Finally, we find substantial evidence in the administrative record that supports the Commission's findings of fact and conclusions of law, and the

2

Commission did not abuse its discretion in concluding that discharge was the appropriate discipline under all the circumstances.

## BACKGROUND

### I.

This is Merritt's second appeal in this matter. The first appeal was dismissed by this court because Merritt tried to appeal from an interlocutory trial court order that remanded the case to the Commission for further proceedings and findings. (*County of Los Angeles v. Los Angeles County Civil Service Com.* (2018) 22 Cal.App.5th 174.)

Although the first appeal was dismissed, this court's 2018 opinion provides a comprehensive statement of the administrative proceedings up to the time when the matter was remanded to the Commission. Accordingly, we repeat those portions of that opinion as they relate those relevant facts:

"**INTRODUCTION AND SUMMARY**

"The County . . . fired Gregory Merritt, a supervisor in the . . . Department . . . for (1) failing to adequately supervise a social worker, Patricia Clement, and (2) approving Clement's unjustifiable closure of a case of suspected child abuse without first consulting the Department's records, as required by [the] Department['s] policy. Those records indicated the child—eight-year-old Gabriel Fernandez—was at risk of further abuse and that the file unquestionably should not have been closed. In May 2013, less than two months after Merritt approved closing the file, thereby ending the Department's efforts to protect the child, Gabriel's mother and her boyfriend beat the child to death.

"Merritt appealed his discharge to the . . . Commission . . . . After taking evidence, a hearing officer

3

found that Merritt had been negligent, but set aside the discharge, instead imposing a 10-day suspension as the only penalty. The County objected to reinstating Merritt. In response, and without reading the record or receiving any further evidence, the Commission adopted the hearing officer's negligence findings, but substituted a 30-day suspension without backpay as the penalty.

"The County filed a petition for writ of administrative mandate, asking the Superior Court to overturn the Commission's decision requiring reinstatement and to instead uphold its firing of Merritt. Merritt filed a separate petition for writ of traditional mandate seeking an award of backpay. The Superior Court consolidated the two petitions.

"On May 5, 2016, the Superior Court, having concluded the Commission set forth insufficient findings to 'bridge the analytic gap' between the evidence of Merritt's failings and its decision to impose a 30-day suspension rather than discharge (or any other possible penalty), partially granted the County's petition, to this extent: It remanded the matter to the Commission with instructions to set aside its decision, make appropriate findings, reconsider the penalty based on those findings, and issue a new decision that includes findings explaining its rationale. The court explicitly stated its order was interlocutory. It did not require or foreclose any particular decision by the Commission and left for future review by that court the core issue of Merritt's discharge or reinstatement. The court denied as moot Merritt's petition for an award of backpay, with the express understanding that it could be revived depending on the Commission's decision. In a colloquy with the judge, Merritt's counsel acknowledged that this

4

interlocutory order would not be subject to appellate review. Nevertheless, Merritt appealed.  [¶] . . . [¶]

### "FACTS AND PROCEDURAL BACKGROUND

"1.    *Events leading to Merritt's discharge.*

"Gabriel's teacher first reported suspected physical abuse of Gabriel to the Department's emergency response unit in October 2012.  The Department had previously received reports of abuse or neglect of other children in the home.  On December 27, 2012, Merritt was asked to screen the case for family preservation. Thereafter, the Department opened a voluntary family maintenance case plan, signed by the mother on January 29, 2013.  The voluntary family maintenance case plan was assigned to . . . Clement, a social worker under Merritt's supervision.

"After the mother refused services, Clement recommended closing Gabriel's case on March 29, 2013, which Merritt approved on April 5, 2013.  The family's case was finally closed with Gabriel's sibling on April 25, 2013.  About a month later, on May 22, 2013, Gabriel's mother and her boyfriend beat him severely; he died of his injuries two days later.

"The Department launched an internal affairs investigation after the child's death.  The investigation revealed, among other things, that Clement had failed to conduct the required assessments regarding the safety of Gabriel's home environment and his need for mental health services.  For example, the case file and online records showed missed interviews with Gabriel, bodily injuries to Gabriel, that Gabriel had suicidal ideations and had allegedly been sexually abused by a relative, and the failure of the mother to cooperate.  These factors should have precluded closing the case.  Yet, the case was closed.

5

"Following the investigation, the Department decided to terminate four social workers, including Clement and Merritt. The Department discharged Merritt for his negligent supervision of Clement, citing his failure to ensure Clement: complied with continuing services case management policies; screened and assessed Gabriel and his siblings for mental health services; complied with contact and documentation requirements; properly investigated and assessed allegations of physical abuse; assessed Gabriel's mother's parental capacity; assessed an emergency response referral; and thoroughly assessed the appropriateness of terminating Gabriel's case. The Department also cited Merritt's failure to comply with its standards for supervising children's social workers, including Merritt's failure to review the paper case file and the Department's online CWS/CMS case record system before closing Gabriel's case.

"2. *Proceedings before the Commission.*

"Merritt appealed the discharge to the Commission and requested a hearing. The Commission's hearing officer held an evidentiary hearing, including two days of testimony, and issued written findings of fact and conclusions of law. After summarizing the witnesses' testimony and documentary evidence, the hearing officer made the following findings of fact, among others:

"—Merritt 'relied on . . . Clement, an experienced social worker, and she failed to perform her duties to his expectations.'

"—'The un-rebutted testimony demonstrates that [Merritt] asked . . . Clement appropriate and necessary questions about the case at regular meetings between them.'

6

"—'Clement misrepresented the circumstances surrounding the services she was providing to the minor and his family and failed to accurately report said circumstances to [Merritt].'

"—'Clement misrepresented facts about the minor and his family's circumstances to [Merritt] when she recommended closing the case.'

"—Merritt 'could have been more thorough and involved in supervising . . . Clement and the case involving this minor and his family.'

"—'The evidence on the record is not sufficient to sustain the discharge of [Merritt].'

"—'The evidence supports a [10]-day suspension.'

"The hearing officer concluded the Department 'sustained the burden of proof that [Merritt] did not provide sufficient supervision to . . . Clement,' but did not sustain its 'burden of proof that discharge is the appropriate level of discipline,' and recommended the Commission reduce Merritt's discharge to a 10-day suspension.

"The Commission tentatively accepted the hearing officer's recommendation to reduce the discharge to a 10-day suspension, and the County timely filed objections in response. The Commission sustained the County's objections in part, rejected the recommended 10-day suspension, and issued a new decision reducing the discharge to a 30-day suspension with no backpay.

"3.      *Proceedings before the trial court.*

"The County then filed a petition for writ of administrative mandamus under section 1094.5 of the Code of Civil Procedure seeking an order compelling the Commission to set aside its decision to reduce Merritt's discharge to a 30-day suspension without backpay, and directing the Commission to sustain the

7

Department's decision to discharge him.  Merritt opposed the petition and filed his own petition for the issuance of a writ of traditional mandate under [Code of Civil Procedure] section 1085 to require the Commission to award him backpay.  The court ordered the two petitions consolidated . . . .

"A 22-page tentative decision, issued on the morning of the hearing on the petitions, summarized the trial court's conclusions regarding the Commission's findings as follows:

" 'In sum, the Commission's findings concerning Merritt's general reliance on his social workers without micro-managing them, and the fact that he relied on Clement's misrepresentations, are supported.  But the *reasonableness* of this reliance was a material issue.  There was no testimony that Merritt was *entitled* to rely on Clement's misrepresentations and not do more.  The Commission failed to make findings concerning (a) Merritt's knowledge of Clement's failings and whether this meant he should not defer to her management of Gabriel's case, (b) Merritt's duty to ensure that Clement understood the risk factors, that she complied with her duties, and that she performed her work properly, (c) his *separate duty* to review the online and paper file before closing the case, and (d) his failures to act based on his own personal knowledge.  The facts concerning these issues support findings that would *undermine* the Commission's [1] implicit finding that Merritt's reliance on Clement was reasonable, and [2] its actual findings that Merritt could have been more thorough, but the evidence is insufficient to sustain his discharge.' [¶] . . . [¶]

"The court continued, 'the Commission failed to provide any reasoning or analysis for its imposition of a 30-day suspension without [backpay] instead of firing Merritt.  That is the crux of

8

this case.  The Commission's findings do not support a 30-day suspension, and the Commission must make proper findings and then reconsider the appropriate penalty.

"The trial court, however, refused to 'bypass the Commission and sustain the [Department]'s decision to discharge Merritt,' as the County had advocated.  The court reasoned it could not 'conclude that the Commission reasonably can reach only a result of discharge' based on the facts before it and without additional findings from the Commission.  Thus, the trial court determined '[i]t [wa]s preferable that the Commission make appropriate findings on the issues discussed [in its decision] and reconsider the penalty before any further evaluation by the court.'

"The trial court's tentative ruling also called for issuance of a writ 'directing the Commission to set aside its decision, issue new findings concerning the issues raised [in its decision], and reconsider the penalty based on those findings.'  The court stated, 'in issuing the writ, the court does not intrude on the Commission's discretion to conduct a [de novo] hearing, review the record independently, or remand to the Hearing Officer for new findings.'

"At the May 5, 2016 hearing, the trial court made it clear it was not deciding whether the Commission abused its discretion: 'I don't think [I] need to decide at this time the County's argument that the Commission abused its discretion by not reviewing the record or conducting a de novo hearing.'  The court noted, however, the County was 'free to renew that argument,' should the Commission simply remand the matter to the hearing officer and again impose a suspension.

9

"Because the trial court remanded the matter to the Commission, it denied Merritt's petition for backpay as moot. It noted, however, the County had conceded 'if the Commission's decision to suspend Merritt is upheld, the County will owe Merritt [backpay] from the date of its decision.'" (*County of Los Angeles v. Los Angeles County Civil Service Com.*, *supra*, 22 Cal.App.5th at pp. 176–182, fn. omitted.)

Merritt appealed the trial court's decision to grant the County's writ petition and remand the matter to the Commission for further proceedings and findings. We concluded the court's order was nonappealable and dismissed the appeal.

II.

In response to the trial court's remand, the Commission voted to vacate its original order and read the record. Nine days later, the Commission transmitted its proposed new decision to Merritt who filed timely objections to the proposed decision. He argued that discharge was not an appropriate penalty. "Rather, he is entitled to progressive discipline." Merritt asked the Commission to consider imposing a 10-day suspension as requested by the hearing officer or reimpose the 30-day suspension if it determined a harsher penalty was warranted.

On October 17, 2017, the Commission issued its final decision upholding Merritt's discharge. It also issued findings of fact and conclusions of law as part of that decision. As relevant to this appeal they read as follows:

"FINDINGS OF FACT  [¶] . . . [¶]

"5. [Merritt] was . . . Clement's direct supervisor, and it was his responsibility to ensure that services provided to minor Gabriel and his family were appropriate and that . . . Clement

10

complied with all [the] Department['s] procedural guidelines and policies.

"6. On April 5, 2013, [Merritt] approved, without comment, a Safety Assessment . . . which concluded that there were no threats to the safety of minor Gabriel and that closure of minor Gabriel's case was appropriate at that time.

"7. On April 25, 2013, [Merritt] approved the closure [of] minor Gabriel's case based on . . . Clement's recommendation. Before approving the termination of services, [the] Department['s] policy required that [Merritt] review the case file and online records, including the risk assessment and family strengths and needs assessment, to ensure that the risk assessment for the child was low and that [the] Department['s] policies and procedures were followed. [Merritt] was required to document that the review had been conducted and approved the termination of the case or return it to the social worker as appropriate. [Merritt] concedes that he did not review the file, online records or other critical documents before approving, in writing, the closure of minor Gabriel's case.

"8. On May 22, 2013, minor Gabriel was severely beaten by his mother and her boyfriend and died as a result of that beating on May 24, 2013. [¶] . . . [¶]

"13. When [Merritt] approved the closure of minor Gabriel's case, he relied on . . . Clement, an experienced social worker who he knew had a history of performing below expectations, as evidenced by his comments on her performance evaluations.

"14. . . . Clement misrepresented the circumstances surrounding the services she was providing to minor Gabriel and his family and failed to accurately report said circumstances to

11

[Merritt]. . . . Clement also misrepresented facts about minor Gabriel and his family's circumstances to . . . [Merritt] when she recommended closing the case.

"15. Notwithstanding . . . Clement's misrepresentations, [Merritt] failed in his responsibilities as her supervisor and as supervisor of minor Gabriel's case by, among other things:

"(a) failing to ensure that . . . Clement followed [the] Department['s] policies and procedures,

"(b) failing to become appropriately involved in supervising . . . Clement to ensure that she understood the risk factors and that she performed her duties timely and properly in the case involving minor Gabriel and his family, particularly in light of [Merritt]'s knowledge of . . . Clement's shortcomings as a CSW III,

"(c) failing to ask . . . Clement appropriate and necessary questions about the case at regular meetings between them,

"(d) failing to review the case file and online records at any stage and specifically before approving . . . Clement's recommendation to close the case, as required of him by [the] Department['s] policies and procedures,

"(e) overlooking, or worse, ignoring information that was directly e[-]mailed to [Merritt] regarding the mental health of minor Gabriel and possible sexual abuse in the home.

"16. [Merritt] failing to take appropriate actions even though [Merritt] was personally aware that minor Gabriel's teachers and others had reported continuing abuse and physical injuries, including the fact that minor Gabriel had been shot with a BB gun and had a 'BB' embedded in his chest, and that minor Gabriel was reporting suicidal ideations. [Merritt] did not accurately assess the potential risks to minor Gabriel, did not

12

obtain additional mental health screening for minor Gabriel, did not assess the continued propriety of the case plan, and failed to take other actions based on the facts known to him, or which should have been known to him.

"17. Had [Merritt] reviewed the case file and online records as required by [the] Department['s] policy or as merited by the information known to him, he would have seen a risk level and pattern of abuse of minor Gabriel that was inconsistent with both the Safety Assessment and . . . Clement's recommendations. [Merritt] conceded, after the fact, that a complete review of the file indicated that the file should not have been closed and that there should have been further supervision through court intervention. [Merritt] also acknowledged some responsibility stating he could have reviewed . . . Clement's work more.

"18. A review of minor Gabriel's case file and online records would have also revealed, among other things, that . . . Clement had not properly documented minor Gabriel's physical injuries; that . . . Clement failed to assess the mother's parenting capacity or to ensure that the mother was participating in mental health services; that minor Gabriel was missing mental health appointments; that . . . Clement had not accurately assessed the risks to [m]inor Gabriel; that . . . Clement had not made the necessary visits with minor Gabriel and his family, including private interviews with the children in . . . minor Gabriel's home; that . . . Clement had not accurately reported important information regarding the visits she did make, such as minor Gabriel's injuries, reports of sexual abuse as well as other critical information pertaining to minor Gabriel.

"19. [Merritt] had no prior record of discipline in his approximately 24 years of employment with the County.

13

"20. From approximately January to April 2013, [Merritt] had a significant [workload] during which time he managed approximately 14 CSW's in two offices. [Merritt] did not complain to his supervisor, Kimble Mealancon, that he felt overworked.

"21. While these mitigating factors (Findings of Fact 19 and 20) were taken into account, they do not outweigh . . . [Merritt]'s egregious failure to perform his job properly.

"22. The harm to the public service caused by this case is significant and has undermined public confidence in the Department.

"23. [Merritt] displayed a lack of understanding regarding the seriousness of his behavior and a lack of responsibility for his conduct by attempting to blame his repeated failure to perform even his most basic duties on his [workload] and the number of [the] Department['s] policies.

"24. Under the circumstances, given [Merritt]'s poor judgment and failure to exercise proper supervision in this case, there is a legitimate concern that [Merritt]'s errors in judgment may be repeated.

"CONCLUSIONS OF LAW

"1. The Department sustained its burden of proving that the allegations contained in the Department's September 3, 2013 letter were true and that [Merritt] was negligent in supervising minor Gabriel's case.

"2. The Department has sustained the burden of proof that discharge is the appropriate level [of] discipline after considering the mitigating factors cited by [Merritt]."

14

In December 2017, Merritt filed a first amended petition in the trial court for writ of administrative mandamus. He challenged the Commission's October 11, 2017 decision that had concluded discharge was the appropriate remedy.

Merritt pleaded that the Commission had abused its discretion because the findings of fact were unsupported by the record, and the decision "grossly overstated . . . Merritt's culpability and gave little to no attention to the mitigating factors presented at the underlying administrative hearing." He prayed that the court order the Commission to set aside its decision and "direct[ ] the Commission to issue a new decision, which does not conclude that discharge is the appropriate penalty . . . and awards him a make whole remedy including back wages and benefits" as required by law.

In his opening brief in support of his writ petition, Merritt refined his arguments. He again criticized several of the Commission's findings of fact as erroneous and unsupported by the record; specifically, he focused on those findings that found he "failed to assess the continued propriety" of the case and that he "ignored an e[-]mail regarding possible sexual abuse in the home." (Initial capitalization and boldface omitted.) He also criticized the evidentiary basis for the Commission's conclusions that he "was negligent in supervising" the case and Clement, and that he was "negligent in discharging his own duties." (Initial capitalization and boldface omitted.) Finally, he insisted that under general principles of negligence law his "liability for any negligence is reduced or eliminated by [the Department's] comparative fault." (Initial capitalization and boldface omitted.)

In support of his comparative fault analysis, Merritt asserted that, in a "massive organization responsible for the welfare of some 35,000 children, it was only a matter of time until systemic understaffing resulted in tragic consequences." He further asserted the Department breached its duty to maintain sufficient staffing. "For years, [the Department] has maintained a regime that systemically overwhelmed [social workers] with work." Proof of this breach of the Department's duty, he argued, was a newspaper quote in the administrative record from the mayor of Lancaster, who said: " 'We know this system is broken. . . . We are accountable for what happened to [Gabriel]. How dare we point the finger to the social workers[?] It's a disgrace that we point the finger to the people whose own testimony is we need 1,000 more people and we give them 50.' "

Merritt used the comparative fault analysis to argue that discharge was not an appropriate discipline under all the circumstances. He should either be absolved of his own misconduct, or his discipline should be limited to a short suspension as recommended by the hearing officer or as ordered by the Commission in its first order. He also complained that the Commission failed to consider adequately his exemplary 24-year work record and other mitigating factors, and utilized findings not supported by the evidence in the record before upholding his discharge.

Prior to the hearing, the trial court issued a 17-page tentative ruling that exhaustively went through the history of the case, the testimony of key witnesses, and the findings and conclusions of the Commission. The tentative was to deny the petition. At the hearing, the court focused on the arguments raised in Merritt's opening brief, explained the court's analysis

16

and conclusions at length, and engaged in a robust discussion with Merritt's counsel about them.

During argument, Merritt's counsel additionally complained that the Commission had changed the focus of its decision, from a charge against Merritt for negligent supervision to one that he was also personally negligent. The court questioned whether Merritt was arguing that he had not been given adequate notice of the charge for personal negligence. If so, that argument was waived because it had not been raised in the papers. Merritt responded that the argument had not been waived because the claim had been raised in the briefs; it went to the issue of reliance; that is, whether Merritt was justified in relying on Clement's misrepresentations, and that this change adversely affected how the Commission evaluated the appropriate discipline.

The court adopted its tentative ruling as its final decision without any changes or additions. Judgment was entered denying Merritt's petition for writ of administrative mandamus, and Merritt filed a timely appeal.

## DISCUSSION
### I.
### The Due Process Challenge

Merritt argues he was denied basic due process because the original notice of discharge stated that it was the result of "negligent supervision" over the case. Yet, when the Commission issued its proposed final decision, his discharge was also upheld on the theory of "personal negligence." He claims he "did not have notice" of these new allegations or legal theories relied upon by the Commission "because they were not in the [n]otice of [d]ischarge. Consequently, the Commission's upholding of the

17

termination violated statutory notice requirements and the due process notice requirements under the California Constitution."

We conclude that Merritt forfeited this claim. He did not raise it at the first opportunity; that is, when the Commission issued its proposed decision, and he delayed mentioning it, even tangentially, until oral argument on the petition. He cannot raise it now for the first time on appeal.

A.      *Standard of review*

An issue may not be raised for the first time on appeal from denial of a petition for writ of administrative mandate. (*Fox v. State Personnel Bd.* (1996) 49 Cal.App.4th 1034, 1039.) If it was not raised in the trial court it is deemed waived. Further, the issue must be raised with the administrative agency at the first available opportunity or it is deemed waived. (*Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 718; *Fox*, at p. 1039.) These rules serve the important purpose of permitting the administrative agency and the court to correct alleged errors, procedural or substantive, in the first instance. The only time the waiver doctrine will not be applied is in those rare situations where the issue "is one of public interest or the due administration of justice, and involves a pure question of law on undisputed facts." (*Fox v. State Personnel Bd., supra,* 49 Cal.App.4th at p. 1039.)

B.      *Merritt did not raise the due process issue with the Commission and thus it was forfeited*

Merritt argues the Commission's postremand final decision contained the first notice that the theory supporting his discharge was also based on his personal negligence, not just on his negligent supervision of Clement. He makes no argument that he raised this issue with the Commission.

18

When the Commission issued its proposed decision, Merritt was offered an opportunity to file objections to the proposed decision, which he did. Nowhere in those objections did he make a due process argument. Nothing in the record suggests, nor does Merritt contend, that he was misled or prevented from alerting the Commission to any alleged due process violation. That was the time to raise any fundamental due process violation and challenge the basis for the decision.

Having elected not to afford the Commission a reasonable opportunity to reconsider its decision based on this claim, he waived any such challenge in the trial court, and therefore any such challenge on that ground here. (See, e.g., *Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1449 [teacher waived due process challenge by not raising it first before administrative agency]; see also *Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 175, fn. 5; *Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 103–104; *City of Walnut Creek v. County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019.)

C.       *The due process issue was also waived by not being raised until oral argument on the petition*

Merritt contends he did not waive the due process issue in the trial court because he "raised the facts and legal theories underlying the argument in the oral proceedings before the trial court." The predicate for this contention is that the issue raised in the trial court, and the issue raised on appeal, are sufficiently similar that the due process issue was preserved for review. We are not persuaded. However, we need not address that point. The argument there was a due process violation was not raised until after briefing was complete and was thus forfeited.

19

Merritt filed an amended writ petition after the Commission issued its postremand decision. Nowhere in that petition did he make a due process argument, much less one based on the lack of receipt of proper notice of the charges against him. The same is true of the opening and reply briefs he filed in the writ proceeding almost two years after the decision was rendered. As he forthrightly admits in his opening brief on appeal, the first time he raised any alleged due process violation was during oral argument on the petition.

At the hearing, the court interrupted counsel to ask whether the due process violation argument he was making was in the briefs. It suggested this argument had been waived. Counsel replied, "It is not waived because the County didn't rely on it for the issue of whether he reasonably relied on Clement. . . . It goes to this reasonable reliance issue. . . . [¶] If what Merritt had done was just negligence, just ignored a few things he shouldn't have, that would have been negligent supervision. . . . What they did in their finding was ramp up, increase dramatically Merritt's misconduct . . . to say he was far worse in terms of his conduct th[a]n . . . the Commission had found before and that's one reason why the mitigating factors and reliance are worse. The worse [his] conduct, the less he's entitled to rely upon Clement."

There was no due process argument in Merritt's briefs on the petition. It is also clear from the court's colloquy with counsel that Merritt's oral argument did not go to a lack of notice; rather, it went to the propriety of the Commission's decision as to the appropriate discipline. To the extent the argument could be viewed as alleging a due process violation, we note Merritt waited to raise it until several years after the Commission issued its

20

final decision. This unexplained delay did not allow the County a reasonable chance to address the issue in its written briefs. And it disadvantaged the trial court which had issued a 17-page tentative ruling based on the petition and the written arguments of counsel.

The time to have raised the due process argument was in Merritt's petition and opening brief on the petition. It would have afforded the County a fair opportunity to address the issue in the first instance. It also would have created a reviewable record. At this point, we have no record other than the colloquy between Merritt's counsel and the court, and the point of that discussion was that the trial court found the issue had been waived. Moreover, we note the notice of discharge is 30 pages, single-spaced.

Citing *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, Merritt asserts the issue was preserved for appellate review because he was only required to bring the issue to the court's attention; he was not obligated to engage in extensive argument with citations to authority to preserve it. However, the rules regarding the preservation of an issue for appellate review should not be confused with the requirement that the issue be raised in a timely fashion. Merritt did not timely raise the issue as he should have in the petition and his briefs. The effort to bring it to the court's attention during oral argument was simply too late.

It is suggested that due process violations should be addressed by the court even if untimely. That argument might have merit if the due process violation prevents a party from raising the issue. But where, as here, a party volitionally fails to raise the issue until years after the issue could have first been raised, the issue is necessarily forfeited. It is also argued that

21

the Commission's findings violated Los Angeles County Civil Service Rule 18.02 because the Commission relied on charges not the notice of discharge. But this argument fails for the same reason. Merritt waited too long to raise the issue and it was forfeited.

We recognize that there are certain circumstances where courts may choose to address an issue rather than deem it waived. Those rare instances generally involve issues of public interest or the due administration of justice where the issue is one of law on undisputed facts. (*Fox v. State Personnel Bd.*, *supra*, 49 Cal.App.4th at p. 1039.) This is not one of those cases. The issue was waived and there is no reason to revive it.

D.    *Even if the issue had not been forfeited, the due process challenge fails on the merits*

As discussed, Merritt alleges a due process violation because he was accused in the notice of discharge with negligent supervision of Clement, but in the Commission's decision he was also found to have been personally negligent in the handling of the case file. Merritt claims this change in theory was a denial of basic due process.

In support of his claim, Merritt cites *Smith v. State Bd. of Pharmacy* (1995) 37 Cal.App.4th 229. In *Smith*, a pharmacist was charged in a disciplinary proceeding with, among other violations, the excessive furnishing of controlled substances. As counsel in *Smith* conceded at oral argument on appeal, "when he saw he was not able to prove Smith's personal, volitional dispensing, he shifted the Board's case to one of proving Smith was responsible for the dispensing done by others." (*Id.* at p. 242.) In setting aside that portion of the judgment, the appellate court found that "the accusation did not afford Smith

22

the basic, appropriate elements of procedural due process, in that he was misled by the accusation and the prehearing conference statement into believing he needed to prepare a defense to the personal dispensing charges." (*Ibid.*) The court also noted that because of the change in theories Smith was "prejudiced by his inability to present expert testimony on the appropriate standard of care." (*Id.* at p. 244.)

Although there is a superficial similarity between the cases, *Smith* is not controlling. Here, the notice of discharge charged Merritt with negligent supervision. It then detailed in excruciating detail his repeated failures which resulted in the death of the child. Among those many enumerated failures, Merritt violated the Department's policy and elected not to personally review the case file before closing it. He admitted that if he had reviewed the file it would have been apparent that it should not have been closed.

It is evident from the notice of discharge and the extensive administrative record that Merritt knew what he was being charged with. Moreover, he does not suggest what other evidence he would have presented or how he was prejudiced by the Commission's order—other than to suggest it made it easier for the Commission to justify discharge as the appropriate penalty here. His only argument is that the addition of personal negligence, in and of itself, constitutes a procedural due process violation, and that that alone justifies reversal of the Commission's order. We conclude, based on our review of the entire record, that Merritt was not denied due process under these facts. All relevant facts were presented at the administrative hearing and Merritt had full opportunity to address them.

II.

Specific Civil Tort Principles Do Not Apply

Merritt insists that the Department was a complete disarray in 2013 when he was handling the underlying case file and the disciplinary proceeding started. There is evidence in the administrative record that in 2013 there was serious understaffing and other systemic problems, and that supervisors, such as Merritt, often found themselves in zugzwang. At one point, at least for a short while, Merritt was even tasked with supervising two separate offices.

Merritt argues he may bring the Department's systemic difficulties into this case as a defense, or perhaps to excuse, to his own mistakes. His argument runs this way: Although he was charged with negligent supervision and found to have been personally negligent, the terms "negligence" and "supervising negligence" are not defined in the California Code of Regulations relating to social services and other applicable rules, as well as the notice of discharge. Relying on *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310, Merritt argues that the trial court should have looked to the civil rules on negligence, and in particular the rules governing comparative negligence, in order to determine whether the Commission followed the correct legal standards in concluding Merritt should be disciplined at all, and whether, if discipline were appropriate, whether his discharge was the appropriate discipline. He says that because this involves a question of law, review is de novo. (See *Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 252 [fairness of administrative proceedings is reviewed de novo].)

Merritt cites no cases that suggest that the rules of negligence applicable in the civil realm apply to the field of public

24

employee discipline proceedings. The County fails to cite any cases, either, which address this novel theory. Critically, Merritt fails to offer any cogent or valid reason why such rules should apply in public employee discipline cases, other than to say there is a lack of a definition of negligence in the rules here, which is not persuasive. Nor can we conceive of any compelling reason why, especially in this case, the trial court was obligated to look elsewhere for legal guidance.

The governing rules spelled out specific actions a supervising social worker is to take. It is undisputed that Merritt did not follow the rules. He may have seen himself as the ideal supervisor: He boasted that he did not micro-manage the social workers under him. However, supervisors who choose not to closely supervise employees are still obligated to follow the rules on handling a case file. Those rules do not disappear or somehow become less insistent if it can be shown that the Department is not providing adequate staffing and other support to supervisors and line employees.

Similarly, Merritt seems to suggest that he should be afforded some grace because Clement lied to him about what she had done and whether the child was in danger. It is undisputed that Clement made material misrepresentations and that he relied on those statements. It is also undisputed that Clement was known by Merritt to be a marginal employee and that she required greater supervision.

But no matter how pressed Merritt may have felt by the Department's failings, or Clement's duplicity, he still had a mandatory duty under governing the Department's rules, among other things, to open and review the case file thoroughly before closing it. He admits he did not do that. And he concedes that

had he followed proper protocols he would have seen it should not be closed. The trial court correctly refused Merritt's invitation to look to the civil world for additional authority.

## III.
### Substantial Evidence Supports the Judgment

The Commission made numerous factual findings, as enumerated above. Of those findings, Merritt contests two of them. He argues insufficient evidence supports the finding that (a) he failed to assess the continued propriety of the case plan, and (b) he ignored an e-mail with important information regarding the minor's condition.

A. *Standard of review*

In reviewing the findings of the Commission, the trial court is required to exercise its independent judgment. (*Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1167.) The trial court must "afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

On appeal, we review the trial court's findings under the substantial evidence test. (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 824; *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 72–75.) Under this extremely deferential test, we accept as true the evidence that supports the judgment, disregard conflicting evidence, and draw all reasonable inferences in favor of the judgment. We focus on the findings made by the agency, not those made by the trial court. (See *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 616–617.)

26

B.   *Merritt failed to continually assess the family case plan*

The Commission concluded that Merritt failed to "assess the continued propriety of the case plan, and failed to take other actions based on the facts." Merritt asserts that the uncontradicted evidence in the record contradicts the Commission's finding.

There was evidence that Merritt was aware that several people, including teachers at the school, had reported that Gabriel had suffered continuing abuse, and that he had reported suffering from suicidal ideation. Merritt points out that as a result of these reports he assessed the continued propriety of the case plan and assigned counseling services to the family. He helped the family receive other services on several occasions and modified the case plan accordingly.

However, the evidence, and the propriety of Merritt's actions, was not one-sided or uncontradicted. There was evidence that he should have offered other services, including an updated mental health consultation. He admitted that, on several occasions, changes were not made to the case plan.

Merritt was required to assess on a continuing basis the propriety of the family case plan. The fact he made some changes to the plan is indicative of some assessment. But whether his assessment was sufficiently continuing, and whether it assessed the family's needs adequately, are judgment calls. There was substantial evidence, including Merritt's failure to address the mental health and sexual abuse issues, from which the Commission could conclude that Merritt's actions were not in compliance with his duty. Therefore, the Commission's finding of this fact must be upheld.

27

C.    *Merritt ignored an important e-mail*

The Commission concluded that Merritt "overlook[ed], or worse, ignore[ed] information that was directly e[-]mailed to [him] regarding the mental health of minor Gabriel and possible sexual abuse in the home."  But Merritt argues "the record contains no evidence, contradicted or uncontradicted" that he "ignored" any e-mails.  The word "ignore" means to deliberately disregard something.  Although he admits he received the e-mail, he testified that "somehow it got opened and closed, and I didn't recall it."  He also falls back on the press of business argument: He received the e-mail on the same day he was assigned to supervise a second office in addition to his normal office responsibility and, as a result, his workload doubled overnight.

This was not a random e-mail of little significance.  The e-mail notified Merritt about an emergency response referral.  The allegation was that a relative and a companion had sexually abused Gabriel.  Merritt's duty was to enter that information in the case record.  Under policy, the case was to remain open.  However, Merritt did not enter the information and closed the case file despite the fact the emergency response referral was still open.

Merritt may want to parse the Commission's word choice and argue that "ignored" is not justified.  However, whether Merritt overlooked or ignored the e-mail is of little importance here.  There was substantial evidence from which the Commission could reasonably conclude that Merritt's failure to input the information and close the case file was either grossly negligent or an intentional act.  The Commission's general finding as to Merritt's response to the e-mail will not be disturbed.

D.     *There is substantial evidence Merritt was negligent in his supervision of Clement*

Merritt argues that there was "no evidence in the record to substantiate the trial court's finding" that he negligently supervised Clement.  Relying on general principles of tort law, he argues a supervisor cannot be held responsible for negligent supervision of an employee unless there is some reason to believe the employee would cause harm or there is some evidence that would warn a reasonable person that the employee had a propensity to commit bad acts.  In support of this position, he cites *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889 (prior knowledge of bad act by employee), *Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281 (employer had reason to believe employee represented a risk of harm), *Federico v. Superior Court* (1997) 59 Cal.App.4th 1207 (supervisor knows, or should know, facts that employee presents an undue risk of harm to third persons), and *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038 (specific dangerous conduct by employee, rape, was not reasonably foreseeable).

Relying on these general principles of tort law, Merritt argues that "the administrative record does not support the conclusion that Merritt had reason to believe that Clement's employment created an undue risk of harm to Gabriel or that she had a propensity to misrepresent information."  He knew she "was deficient in some of her job duties."  And he noted on Clement's performance evaluations that she "struggled with completing timely contacts which has resulted in poor statistics being reported" and "that Clement has 'struggled with home visits and case plans."  From this, Merritt insists that he had no reason to suspect that she would lie to him so egregiously on such

29

important issues. He then posits that he "cannot be held responsible for preventing Clement's misconduct through supervision."

Merritt is rightfully aggrieved that Clement made various misrepresentations to him about several important facts. It is undisputed she lied to him; and it is equally undisputed that he accepted her misrepresentations at face value. But any completed misrepresentation requires a willing listener, and Merritt bears substantial responsibility for accepting her statements incautiously.

Merritt understood that Clement was not a model social worker and needed to be supervised closely. Yet, the evidence in the record, which we review under the substantial evidence test, supports the Commission's conclusion that Merritt negligently supervised her. He did not carefully check her work or scrutinize her conclusions; and he signed off on case file actions based on her say-so, without following strict department policy. For example, it was his obligation to read every page of the case file before closing it. The Department's policy required it. But Merritt chose not to open the file at all. He thereby missed the signs that showed Clement had misrepresented key facts and that the case could not be closed.

It was a calculated gamble. Merritt lost. He failed to follow strict department policy and cannot now blame Clement for his own failure to supervise her properly. And he certainly cannot use general tort principles to deflect from his own culpability. His actions must be judged based on what he did, not on an analysis of what tort liability Clement might face if she were sued.

E. *There is substantial evidence Merritt was negligent in performing his own duties*

The Commission found that Merritt broke the Department's policy by his "failure to review the paper case file and the Department's online CWS/CMS case record system before closing Gabriel's case," and by his failure "to ask . . . Clement appropriate and necessary questions about the case at regular meetings between them." Merritt argues the trial court erred in finding he was negligent in performing his duties because the "administrative record shows that [his] actions were reasonable rather than negligent."

Once again Merritt attempts to avoid consideration of his own actions by urging that Clement and the Department are responsible. He concedes he did not open or read the case file before closing it. His excuse is that a policy requiring him to read every document in the file imposes an "impossible burden." If this were a requirement in every case, he said he "would not have time to do it." He thus points out the CSW's in his unit were so overwhelmed that they were quitting or developing debilitating health conditions." The supposedly onerous policy also forced him to rely on the representations of the individual social workers, such as Clement. He could not reasonably anticipate that Clement would lie to him, and he was entitled, as the trial court understood, to believe her statements regarding the case. It would be unfair to make him responsible for failing to check her representations. Moreover, his "supervisors who had case oversight responsibility also failed to take any action."

Not surprisingly, Merritt does not cite any applicable authority to support his wide-ranging finger pointing. The best he can muster is a reference to general tort principles, which

31

misses the mark.  From his vantage point, if there is not a "high degree of foreseeability of harm," then he is acting reasonably and cannot have acted negligently.  He continues by arguing that his failure to read the entire case file in accordance with the Department's policy, and his failure to check on Clement's actions and statements relative to this case file, were all reasonable, not negligent, because it was just too difficult to do what was required.

We are not persuaded by Merritt's attempt to foist blame on everyone besides himself.  Merritt did not do what he was required to do.  Whether the harm to Gabriel was foreseeable or not is irrelevant.  The Commission was looking at Merritt's personal actions and substantial evidence confirms he was negligent in performing his own duties.

F.    *Merritt's liability is neither reduced nor eliminated by the Department's alleged comparative negligence*

Quoting from *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, Merritt reminds us that California has adopted a system of pure comparative negligence.  The "fundamental purpose" of this system is "to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Id.* at p. 829.)

However, Merritt fails to provide any authority that suggests the comparative fault system applies in a public employee discipline case.  Nor does he provide any rational reason why such a rule would or should be transplanted from the tort world to a public employee disciplinary system.

Even if we assume for purposes of argument that the Department's system is overwhelmed by the number of children in need, and even if we assume there is systemic understaffing by

32

the Department that has led to tragic consequences, Merritt does not explain why the Department's problems relieve him of his responsibilities. If his argument prevailed, then the disciplinary system would come to a halt. No employee could ever be disciplined because there would always be the argument that no matter how bad the employee's actions, the Department's systemic failures were somehow worse. We are not inclined to use this case to write the end of the public employee discipline system for the County.

## IV.
### Discharge Was the Appropriate Discipline

Merritt argues that his punishment, discharge from his supervisory position, was "unreasonably harsh." He asserts the Commission's "finding is not based on an adequate consideration of all relevant factors." If the factors were properly evaluated and considered, it would be clear that there was no rational connection between the factors and the penalty chosen, and his termination should be reversed. (See *California Hotel & Motel Ass'n v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212.)

A. *Standard of review*

In an administrative mandamus proceeding, neither we nor the trial court may substitute our own judgment for that of the agency where it comes to the *penalty* imposed by the administrative body, unless we find the agency's decision was arbitrary, capricious, or a patent abuse of discretion. (*Pasos v. Los Angeles County Civil Service Com.* (2020) 52 Cal.App.5th 690, 700; *Oduyale v. California State Bd. of Pharmacy* (2019) 41 Cal.App.5th 101, 117; *County of Los Angeles v. Civil Service Com. of County of Los Angeles* (2019) 40 Cal.App.5th 871, 877.) We

33

must uphold the penalty decision "if there is any reasonable basis to sustain it." (*County of Los Angeles*, at p. 877.)

Our review of the penalty assessed is de novo, and we give no deference to the trial court's determination. (*Pasos v. Los Angeles County Civil Service Com.*, *supra*, 52 Cal.App.5th at p. 700.) In determining whether the Commission abused its discretion, the overriding consideration " 'is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, "[h]arm to the public service." ' " (*County of Los Angeles v. Civil Service Com. of County of Los Angeles*, *supra*, 40 Cal.App.5th at p. 877.)

B.    *The Commission did not abuse its discretion in upholding Merritt's discharge*

The Commission found that discharge was appropriate in this case because (a) the "harm to the public service caused by this case is significant and has undermined public confidence in the [Department]," (b) Merritt "displayed a lack of understanding regarding the seriousness of his behavior and a lack of responsibility for his conduct by attempting to blame his repeated failure to perform even his most basic duties on his work load and the number of [the Department's] policies," and (c) "given [Merritt]'s poor judgment and failure to exercise proper supervision in this case, there is a legitimate concern that [his] errors in judgment may be repeated."

Merritt complains that the Commission did not give due consideration to the fact that any public confidence in the Department was long ago shattered by a broken system that was inevitably going to cause a tragedy. The shifting of the responsibility for the public harm to Merritt is a brazen attempt to deflect the Department's own mismanagement. The decision

34

also perversely lays the blame for the intolerable working conditions and lack of adequate support for the social workers on Merritt as opposed to the Department, whose mismanagement caused the problem. Its mismanagement should not be used as a cudgel to impose greater punishment on Merritt. Finally, the Commission ignored the fact that Merritt had been an excellent employee of the Department for 24 years, was highly regarded by his coworkers, and any perceived negligence should be viewed simply as an aberration unlikely to be repeated.

The overriding consideration in assessing whether the Commission abused its discretion in adopting the penalty it did is the harm to the public service. (*County of Los Angeles v. Civil Service Com. of County of Los Angeles*, *supra*, 40 Cal.App.5th at p. 878.) Merritt concedes that there was grave harm done. He simply argues it was the Department's fault and he should not be personally tarred by its systemic mismanagement. The Commission, however, concluded that the harm was done by Merritt's actions. A perusal of the Commission's findings of fact as well as the administrative record discloses there is substantial evidence in the record to support that conclusion. It may well be, as Merritt argues, that the Department has some internal housecleaning of its own to do. But Merritt is the subject of this disciplinary proceeding. It is his actions that are being reviewed, and in determining the appropriate penalty his negligence is what the Commission must look at. We cannot say under all the facts here that the Commission abused its discretion in concluding that discharge was the appropriate penalty.

Finally, Merritt's pitch that this was just an aberration of an excellent employee, never to be repeated, is belied by the record. He insisted that he could not read every page of every file

35

before closing them.  There just simply was not enough time to do it.  That admission, that he could not follow the Department's policy, implying that he would continue his past practice of relying on the verbal representations of the social workers he supervised to determine what to do in any particular case, is telling.  He demonstrates he has not learned.  And the tragedy that unfolded in the underlying case here is just one unread file away from happening again.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.

SALTER, J.*

We concur:

LAVIN, Acting P. J.

EGERTON, J.

---

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.